IN THE CIRCUIT COURT OF GIBSON COUNTY, TENNESSEE
AT TRENTON

STEVEN MCCOLLUM,

   PLAINTIFF,

- VS -

CIVIL ACTION NO. 8258

INDIANA LUMBERMAN'S MUTUAL
INSURANCE COMPANY,

   DEFENDANT.

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the plaintiff, and sues the defendant, Indiana Lumberman's Mutual Insurance Company, pursuant to Tennessee Rules of Civil Procedure 57 and TCA §29-14-101 et seq., and would show unto the Court as follows:

1. The plaintiff has joined in this lawsuit, all persons who claim any interest which may be affected by the determination of this action.

2. The plaintiff, Steven McCollum, is a resident and citizen of Rutherford, Gibson County, Tennessee.

2. Steve McCollum was employed as a truck driver with McGaughey Lumber Sales. Mr. McCollum was involved in a motor vehicle accident on November 8, 2004 with a vehicle owned by Teague Trucking Company of Poplar Bluff, Missouri, while in the course and scope of his employment. Mr. McCollum was driving a truck owned by his employer, McGaughey Lumber Sales. Mr. McCollum sustained significant injuries as a result of this accident.

3.  Teague Trucking company was insured by Oak River Insurance Company.

4.  Mr. McCollum's attorney submitted a settlement proposal to Oak River Insurance Company by letter dated October 25, 2006. The adjustor, Lee Vagts, offered his remaining policy limits in the amount of $410,984.47 by fax dated November 16, 2006.

5.  Plaintiff's counsel then contacted McGaughey Trucking Company, through their attorney, to determine if they had underinsured motorist coverage at the time of this motor vehicle accident.

6.  Plaintiff's counsel was subsequently advised by letter dated December 21, 2006 that McGaughey Trucking Company did have underinsured motorist coverage with the Indiana Lumberman's Mutual Insurance Company.

7.  Mr. Lee Vagts sent a letter dated December 22, 2006 to Indiana Lumberman's Mutual Insurance Company that they would be willing to offer their policy limits in accordance with requirements of the Tennessee Uninsured Motorist Act.

8.  Plaintiff's counsel wrote Indiana Lumberman's Mutual Insurance Company in accordance with TCA §56-7-1206 indicating we would be willing to accept policy limits and proceed to binding arbitration on the underinsured motorist claim against them pursuant to the statute. (copy attached).

9.  Plaintiff's counsel was subsequently advised by Indiana Lumberman's Mutual Insurance Company by fax dated January 26, 2007 that they would be willing to proceed to binding arbitration on the damages and compensability of the claim, but would not do so in regards to whether they received proper notice under their policy. (copy attached).

10. Upon information and belief, Indiana Lumberman's Mutual Insurance Company contends that Mr. McCollum's underinsured motorist claim is barred by lack of notice.

Therefore, the plaintiff, Steven McCollum would ask this Honorable Court to determine whether Indiana Lumberman's Mutual Insurance Company received sufficient notice of the existence of Mr. McCollum's claim and whether they were prejudiced if they did not receive such notice.

Respectfully submitted,

HILL • BOREN P.C.

_____
RICKY L. BOREN (006312)
Attorney for Plaintiff
1269 N. Highland Avenue
P.O. Box 3539
Jackson, Tennessee 38303-3539
(731) 423-3300

## COST BOND

We hereby acknowledge ourselves as sureties in this cause.

HILL • BOREN P.C.

_____
RICKY L. BOREN

October 25, 2006

Lee Vagts
Oak River Insurance Company
9290 West Dodge Road, Suite 300
Omaha, NE 68114-3363

        RE:  My client:        Steven McCollum
               Your insured:    Joe Teague Trucking
               Claim #:         217476
               Oak River Policy#:  KSA000643

Dear Mr. Vagts:

Steve McCollum is a thirty-nine (39) year old man who lives with his wife and six (6) year old daughter in Rutherford, Tennessee. Mr. McCollum was married in 1991. Mr. McCollum graduated from high school in Greenfield, Tennessee, and while in high school received some training as a diesel mechanic. Unfortunately, that job also requires heavy lifting and the ability to strenuously use both arms. Mr. McCollum's first significant job was at a garage working on changing tires on big trucks from 1986 until 1989. He then went to work for a factory assembling motors which involved repetitive use of both arms and fairly significant lifting. Mr. McCollum went to work as a long-haul truck driver in 1991 and did that job until 1997. In that job, he often had to unload trucks. He quit his job as a truck driver in 1997 so that he could spend more time with his family and be home on weekends.

After quitting long haul truck driving, Mr. McCollum went to work at McGaughey Lumber Company driving a truck. This job involved short term deliveries and allowed him to be home every night. He did, however, have to do significant amounts of lifting and manual labor in this job. He was unable to return to work to his job at McGaughey as a result of the injuries sustained in this accident.

A dump truck owned by Teague Trucking Company, turned left in front of Mr. Stephen McCollum on November 8, 2004. This accident occurred in a construction zone. I have enclosed photographs of the vehicles, which illustrate the extremely violent nature of this impact.

Page Two
Lee Vagts
October 25, 2006

Due to the severe damage to Mr. McCollum's vehicle, he had to be cut out of the truck. He was picked up by Air Evac Life Team. At the site they noted that he had a open wound where the right humerus was protruding out of his arm. It was noted that rapid transport was needed and he was flown to the nearest major trauma center at St. Francis Hospital in Cape Girardeau, Missouri.

Mr. McCollum's diagnosis on admission to St. Francis Hospital was a closed comminuted mid-shaft fracture of the left radius, a closed comminuted mid-shaft fracture of the left ulna and an open severely contaminated complex wound of the upper right arm. He was taken into surgery under the care of Dr. Trueblood, an orthopedic surgeon at St. Francis. Dr. Trueblood performed a repair of the both broken arms with the use of a DCP plate and screws. They also had to irrigate and clean out the upper arm which is described as a 9" posterior wound (copies of pictures attached). Mr. McCollum also had a 1" laceration on his chin. Mr. McCollum was discharged from St. Francis hospital on November 12, 2004, to receive additional care near his home in Tennessee.

When Mr. McCollum came back to Tennessee, he came under the care of Dr. Michael Glover of Sports Orthopedics and Spine in Jackson, Tennessee, whom he first saw on November 23, 2004. Dr. Glover reviewed the records from St. Francis and noted that Mr. McCollum had both the bones in his forearm fractured with repair by use of plates and screws. He also felt there was a median nerve contusion with parentheses of the left hand and wrist. He also had a hemorrhage in his eye. Dr. Glover recommended physical therapy for his left arm with wrist and hand range of motion. Dr. Glover ordered an EMG which was performed on January 4, 2005. That test showed a severe, incomplete, left median nerve injury at the mid-forearm. Dr. Glover noted that the EMG test was consistent with the median nerve palsy of the forearm.

In January of 2005, Dr. Glover directed Mr. McCollum to begin occupational therapy to try and get as much function back as possible. Dr. Glover felt that his physical symptoms were suggestive that he was developing some degree of Reflex Sympathetic Dystrophy (RSD). Dr. Glover's x-rays performed on February 24, 2005, strongly suggested that Mr. McCollum was under going a delayed union since there was very little healing occurring at his fracture site. A repeat EMG was performed on April 5, 2005. That test also showed a severe, but partial lesion of the median nerve but showed some evidence of reinnervation of the muscles in his forearm. Dr. Glover prescribed a bone stimulator to try to assist him in getting healing at his fracture site.

When Dr. Glover saw Mr. McCollum on May 19, 2005, he noted that it was seven months out from his injury and he still had a non-union present. Dr. Glover recommended that the patient undergo a removal of the plate, bone grafting and re-plating of the radius with a compression technique. Mr. McCollum was re-admitted to Jackson Madison County General Hospital on June 2, 2005, where Dr. Glover and Dr. David Yakin performed a repair of the non-union with a compression technique and the removal of the plate previously installed. A graft from Mr. McCollum's own hip was used for purposes of the bone graft.

Page Three
Lee Vagts
October 25, 2006

Dr. Glover moved away from Tennessee in September of 2005 and Mr. McCollum's care was taken over by Dr. David Yakin of the same medical group. Dr. Yakin first saw Mr. McCollum as his primary physician on August 30, 2005. Dr. Yakin sent Mr. McCollum for another EMG to determine the status of his median nerve injury on January 3, 2006. That EMG showed some marked improvement in the median nerve function although there was suggestion that he may have an entrapment of the median nerve at that site (carpal tunnel syndrome).

Due to his continued problems with pain, Dr. Yakin referred him to a pain management specialist, Dr. Phillip Green, whom he first saw on June 1, 2006. On the initial visit Dr. Green noted that Mr. McCollum had atrophy of his left forearm and diminished strength. He also had diminished sensation in the left third, fourth and fifth digits. His diagnosis was neuropathic left upper extremity pain and median neuropathy. Due to the period of time since Mr. McCollum's injury, Dr. Green felt that nerve blocks would not have a high probability of providing any long term relief. Dr. Green felt that Mr. McCollum should continue physical therapy and be placed on treatment for neuropathic pain with medication.

Mr. McCollum returned to see Dr. Green on June 27, 2006. He could not really tell if the medications had been helpful but did note that Mr. McCollum had lack of energy or low level sedation through the day. He also suggested that Mr. McCollum continue with physical therapy. Dr. Green discussed with Mr. McCollum the possible use of nerve blocks for pain control but Mr. McCollum did not wish to pursue that more aggressive approach at that time.

Mr. McCollum last saw Dr. Yakin on June 29, 2006. Dr. Yakin gave him permanent restrictions of no lifting over 5 lbs and no repetitive use of his left arm. Dr. Yakin also assessed him as having a 32% impairment of the left upper extremity based upon the AMA guides. These restrictions clearly excluded Mr. McCollum from his former job as a truck driver. Mr. McCollum's entire job background has required heavy and repetitive use of both arms.

Mr. McCollum has incurred medical expenses to date in the amount of $93,087.49, composed as follows:

| | | |
|---|---|---|
| 1. | EMG Clinic (1/4/05) | $1,367.00 |
| 2. | Sport, Orthopedics & Spine | $8,304.00 |
| 3. | St. Francis Hospital | $37,516.30 |
| 4. | JMCGH | $1,024.00 |
| 5. | Cape Radiology | $1,866.00 |
| 6. | Dr. Trueblood | $4,751.00 |
| 7. | Drs. Carter & Brewer | $337.00 |
| 8. | Air Evac Lifeteam | $7,400.00 |
| 9. | Milan PT | $17,100.00 |
| 10. | EMG Clinic (4/5/05) | $1,382.00 |
| 11. | JMCGH | $8,017.33 |

Page Four
Lee Vagts
October 25, 2006

| | | |
|---|---|---|
| 12. | EMG Clinic (1/3/06) | $1,408.00 |
| 13. | Dr. Green | $330.00 |
| 14. | Prescriptions | $727.86 |
| 15. | Jackson Radiology (12/9/04) | $149.00 |
| 16. | East Carter Ambulance Service (11/8/04) | $408.50 |
| 17. | East Jackson Family Medical | $55.00 |
| 18. | Cardiac Anesthesia Group | $432.00 |
| 19. | Regional Hospital | $422.80 |
| 20. | Advanced Radiology | $90.20 |

Mr. McCollum was totally out of work from November 8, 2004 until August 21, 2006, a total of 93 weeks. Mr. McCollum averaged earning $633.46 per week during the 52 weeks prior to this injury. He therefore lost wages from the period he was totally out of work in the amount of $58,911.78.

Mr. McCollum now has a job working on a farm owned by a friend of the family, in which he makes $7.00 an hour with no benefits. Therefore, Mr. McCollum's earnings have been reduced from $633.46 per week to approximately $280.00 per week, a difference of $353.46 per week. Mr. McCollum is a 39 year old man. Therefore, he has 28 years of work life expectancy before he qualifies for maximum social security benefits. Therefore, Mr. McCollum will have future loss of earnings of $514,637.76.

Mr. McCollum has economic damages arising out of this accident in excess of $650,000.00, composed as follows:

| | | |
|---|---|---|
| 1. | Medical Expenses | $93,087.49 |
| 2. | Lost Wages | $58,911.78 |
| 3. | Future Loss Earnings | $514,637.76 |

It is also highly likely Mr. McCollum will incur future medical expenses as a result of this injury.

Mr. McCollum has serious problems with lack of strength, numbness and sharp pain if he tries to overuse his left arm. The pain often wakes him up at night. Mr. McCollum also has nightmares on a regular basis due to the traumatic experience he sustained in this accident. He does still drive an automobile, but he is scared to drive any sort of truck. Even in his farm job, he tries to avoid driving a truck. Mr. McCollum's daughter is in the first grade and he is not able to pick her up. This is both due to lack of strength and fear that he will drop her.

Mr. McCollum has also went through a lengthy and agonizing period while he was trying to heal the non-union in his arm. This period lasted for approximately a year and a half until he essentially reached his level of maximum medical improvement. He still has major problems with strength, numbness and pain.

Page Five
Lee Vagts
October 25, 2006

Mr. McCollum has significant scars on his arm. These scars often result in people asking him questions about his condition of which, unfortunately, causes him to relive the trauma of this accident once again.

Dr. David Yakin also assessed Mr. McCollum as having a 32% impairment to his left arm. He also gave him permanent restrictions of no lifting over 5 lbs and no repetitive use of his left arm. These restrictions effectively exclude Mr. McCollum from any job he has previously done or is available in rural West Tennessee to a individual with Mr. McCollum's level of training. It is only through the relationship that his wife's family has with his present employer that he has been able to find gainful employment. If he lost this job, he would be effectively excluded from virtually all jobs available in this area. Accordingly, we feel our estimate of future lost earnings is quite reasonable under the circumstances of this case.

Based upon all the factors in this case, I have been authorized to make an offer of settlement for the payment of $1,500,000.00. I would appreciate it if you would review this offer and get back with me at your earliest convenience. If I can furnish you with any further information which will assist you in your evaluation of this claim, please feel free to let me know.

Sincerely yours,

Ricky L. Boren

RLB/cg

Enclosure







Oak River Insurance Company
9290 West Dodge Road., Suite 300
Omaha, NE 68114
(800) 488-2930 – Watts
(402) 393-7619 – Fax



**Berkshire Hathaway Homestate Companies**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Ricky L. Boren, attorney at law | **From:** | Lee Vagts   lvagts@BH-HC.com |
| **Fax:** | 731-423-2135 | **Pages:** | 4 |
| **Phone:** | 402-548-3782 | **Date:** | ~~10/17/06~~  11/16/06 |
| **Re:** | Steven McCullom | **Claim#:** | 217476 |

☐ Urgent     ☒ For Review     ☐ Please Comment     ☐ Please Reply     ☐ Reply ASAP

---

Mr. Boren: under separate cover I am mailing a certified copy of our policy. I have requested

Mr. Teague produce a letter confirming there is no other insurance available.

At this time, we wish to extend to you the choice of one of three settlement options. The first, we offer

the remainder of our policy limits in cash, $410,984.47. The other two involve the use of

Notice: The information contained in this facsimile transmission is intended solely for the use of the above named recipient. The facsimile transmission may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of the Notice of transmission is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any review, dissemination, distribution, or copying of this transmission, in whole or in part, is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by calling sender at the number listed above and immediately destroy the entire facsimile transmission.

•BROOKWOOD INSURANCE CO •CONTINENTAL DIVIDE INSURANCE CO •CORNHUSKER CASUALTY CO
•CYPRESS INSURANCE CO •OAK RIVER INSURANCE CO •REDWOOD FIRE & CASUALTY CO

structured settlements. One is at a cost of $260,000 and we would offer $120,000 cash in addition.

The other option is at a cost of $200,000 and we would offer $200,000 cash in addition.

We would also be willing to discuss other options. Please call me at 402-548-3782 after you

have had a chance to review. Thanks.

Lee Vagts

• Page 2



# FEENEY & MURRAY, P.C.

JOHN THOMAS FEENEY III*
LEE ANNE MURRAY
CATHERYNE L. GRANT
DANIEL A. GAGLIANO
ELIZABETH E. RENNER
BYRON K. LINDBERG
J. WESLEY KING III*
LISA M. McCORMACK*
JOSEPH A. WEIR

401 CHURCH STREET #2800
P.O. Box 198685
NASHVILLE, TENNESSEE 37219
T: (615) 242-3700
F: (615) 242-7111
WWW.FEENEYMURRAY.COM

*ALSO LICENSED IN GEORGIA
*LICENSED IN ALABAMA ONLY
*CERTIFIED AS CIVIL TRIAL SPECIALIST

December 21, 2006

Ricky L. Boren
Hill & Boren, P. C.
1269 N. Highland Avenue
P. O. Box 3539
Jackson, TN 38303-3539

RE:   Steven McCollum v. Tennessee Forestry Association
      Gibson County Chancery Court at Trenton No. 17869

Dear Ricky:

I apologize for the error contained in my letter of December 15, 2006.

The uninsured motorist carrier for Bob McGaughey Lumber Sales, Inc. on the date of the accident was Indiana Lumbermen's Mutual Insurance Company. The company's address is 3600 Woodview Trace, P. O. Box 68600, Indianapolis, Indiana. The applicable policy number is BA 19549492 05. I do not know the adjuster that will be assigned to respond to your claim.

Hopefully, the information in this letter will assist in arriving at a compromise of all pending issues.

Very truly yours,

John Thomas Feeney by
For the Firm    *fl w/ permission*

JTF/sl
c:
Bryan Mauller, Esq.
Holtcamp, Liese, Childress & Shultz
217 North Tenth Street, Suite 400
St. Louis, MO 63101

Lee Vagts
Homestate Companies
9290 W. Dodge Road, Suite 300
Omaha, Nebraska 68114

**DICTATED BUT NOT READ**

December 29, 2006

Geoffrey Lamb
The ILM Group
3600 Woodview Trace
Indianapolis, IN 46268-0600
VIA FACSIMILE 317-875-3601

    RE: Steve McCollum vs. Joe Teague Trucking
       Your Claim #: 622939

Dear Mr. Lamb:

Please be advised that we have agreed to accept Oak River Insurance Company's remaining policy limits of $410,984.47. We will then agree to proceed on to binding arbitration pursuant to TCA §56-7-1206.

The statute requires that this notice shall be given by certified mail, return receipt requested, or by some other method pursuant to which the sender receives written verification that the notice was received. You will be receiving this letter by fax on December 29, 2006. Therefore, this notice is effective as of this date pursuant to the statute. I will also send this letter return receipt requested so there will be no dispute or other unnecessary delay. I look forward to hearing from you at your earliest convenience.

              Sincerely yours,

              Ricky L. Boren

RLB/cg

December 22, 2006

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**AND REGULAR MAIL**

INDIANA LUMBERMAN'S
MUTUAL INSURANCE COMPANY
3600 WOODVIEW TRACE
PO BOX 68600
INDIANAPOLIS, IN 46268

RE:  Claim#:    217476
     Insured:   Joe Teague Trucking
     D/L:       November 8, 2004
     Claimant:  Steve McCollum

Gentlemen:

I am writing as a representative of Oak River Insurance Company, the insurer for Joe Teague Trucking. I have been advised by Mr. McCollum's attorney, Ricky Boren, that according to TCA56.7.1206 that this letter is to serve as a written notice of Oak River Insurance Companys' offer of a full remainder of its policy limits, which are $410,984.47 to settle the bodily injury claim of Mr. McCollum. We will provide verification of coverage upon request.

We understand that you are the uninsured motorist's carrier for Bob McGaughey Lumber Sales, Inc. We understand your Policy Number is BA1954949205.

If you have any questions or if there is anything else that you would require, please feel free to contact me.

Sincerely,

Lee Vagts,
Senior Claims Examiner
Oak River Insurance Company

LV/sk



**The ILM Group**

Indiana Lumbermens Mutual Insurance Company • ILM

National Building Material Assurance Company • NBMA

Lone Star National Insurance Company • LSN

January 26, 2007

Ricky L Boren Esq
The Lawyers of Hill Boren PC
1269 N Highland Ave
POB 3539
Jackson TN 38303-0539

Facsimile : 731-423-2135
Also sent by US Mail

ILM Insured:        Bob McGaughey Lumber Sales Inc
ILM Claim Number:   622939
Your Client:        Steve McCollum

Dear Mr. Boren:

Indiana Lumbermens Mutual Insurance Company ("ILM") understands that Oak River Insurance Company (Oak River) has offered its remaining policy limits to your client, Steve McCollum (McCollum, your client), as settlement of Mr McCollum's claim against Oak River's insured in connection with injuries allegedly suffered by Mr McCollum in the automobile accident that took place on November 8, 2004. ILM understands that your client is prepared to accept the Oak River offer.

To the extent those understandings are correct, ILM consents to the settlement by and between Oak River and Mr McCollum. ILM's consent is made pursuant to the provisions of T.C.A. 56-7-1206 et seq (the TCA statute). Pursuant to the TCA statute and by copy of this letter to Oak River, ILM requests verification from Oak River of the original coverage limits and the limits available for settlement.

ILM consents to arbitration as provided for under the TCA statute. ILM's consent concerning arbitration applies only to tort issues and damages. ILM does not consent to arbitration of the (any) coverage issue(s).

ILM will waive subrogation rights against the party(ies) covered by the Oak River policy who are to be released. ILM's waiver is conditioned on receipt of each such party's written agreement to cooperate in connection with the arbitration between Mr McCollum and ILM.

ILM does not waive any assertion that there is no coverage under the terms, conditions and endorsements of the insuring agreement of the relevant ILM policy issued to its insured, policy number BA 19549492 (the ILM Policy), to wit, there is no coverage under the terms and conditions of the ILM Policy. ILM specifically refers to those terms addressing notice requirements as set out in the ILM Policy, i.e., notice of the underinsured motorist claim was not made within the time required under the policy terms which require prompt notice of a claim.

Please contact me, or ILM Casualty Claims Manager Geoffrey Lamb, should you have any questions regarding this matter. You can contact Geoff at 317 875 3705. My number is 317 875 3707.

Sincerely,

Jill Young /jl
Jill Young, AIC
Casualty Claims Examiner

3600 Woodview Trace   Indianapolis, Indiana 46268-0600   800.428.1441   Fax 317.875.3601   www.ilmgroup.com



**STATE OF TENNESSEE**
**DEPARTMENT OF COMMERCE AND INSURANCE**
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

February 27, 2007

Indiana Lumbermens Mutual Ins Co
P O Box 68600
Indianapolis, IN 46268
NAIC # 14265

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2150 0004 6618 5649
Cashier # 2018

Re: Steven Mc Collum   V.   Indiana Lumbermens Mutual Ins Co

Docket # 8258

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Complaint For Declaratory Judgment was served on me on February 23, 2007 by Steven Mc Collum pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Circuit Court of Gibson County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Gibson County
    P O Box 230
    Humboldt, Tn 38343

## STATE OF TENNESSEE
### CIRCUIT COURT OF GIBSON COUNTY

| | |
|---|---|
| STEVEN MCCOLLUM<br>Plaintiff,<br><br>- vs -<br><br>INDIANA<br>LUMBERMAN'S<br>MUTUAL INSURANCE<br>COMPANY,<br>Defendant. | Civil Action No. 8258<br><br>Summons<br>TO BE SERVED ON:<br>The Commissioner of Insurance for the<br>State of Tennessee as registered agent<br>registered agent for Indiana<br>Lumberman's Mutual Insurance Co. |

**To the above-named Defendant(s):**

You are hereby summoned and required to serve upon Ricky L. Boren, Plaintiff's attorney, whose address is Hill Boren, P.C., 1269 North Highland Avenue, Jackson, Tennessee 38301, an answer to the complaint which is herewith served upon you within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Witness, _Jamie Jones_, Clerk of said Court, at office on the 20 Day in February A.D., 2007.

_Jamie Jones_
Clerk

By: _Deanne Stephenson_
Deputy Clerk

---

To the Defendant(s)
Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary, how-ever, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. (T.C.A. § 26-2-114)

### RETURN OF SERVICE ON SUMMONS

I hereby certify and return, that on the _____ day of _____, 2007, I served this summons together with a copy of the complaint herein as follows: _____

_____

_____
Name of Server
Assistant to _____